**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| SHELBY HARRISON,<br><br>Plaintiff,<br><br>v.<br><br>ASPIRE LAW GROUP, PLLC,<br><br>Serve registered agent at:<br>Registered Agents, Inc.<br>2222 W. Grand River Avenue, Suite A<br>Okemos, Michigan 48864<br><br>Defendant. | Civil Action No.: 2:26-cv-11491<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

COMES NOW Plaintiff, Shelby Harrison ("Plaintiff" or "Harrison"), through her undersigned counsel, and for her Complaint against Defendant, Aspire Law Group, PLLC ("Defendant" or "Aspire Law Group"), states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1. Harrison brings this lawsuit to protect her privacy rights, namely the right to be left alone from unwanted telemarketing calls.

2. The problem with receiving unwanted telemarketing communications, especially robocalls, is a problem that most people in this country, like Harrison, frequently face. For example, in the first three months of 2026 alone, approximately 11.9 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited April 7, 2026).

3. As discussed below, Defendant incessantly harassed Harrison by placing robocalls (*i.e.* prerecorded and/or artificial voice calls) to her phone without her prior express written consent, or any form of consent, to place such calls.

4. Harrison brings this lawsuit against Defendant for improperly placing prerecorded voice calls to her phone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) *et seq.*, and the TCPA's corresponding regulations.

5. Moreover, the receipt of unwanted telemarketing communications has been, for many years, the top consumer complaint made to state and federal agencies around the country. This case is also about stopping incessant telemarketers, like

Defendant, from placing calls to Harrison, whose phone number was registered on the National Do-Not-Call Registry ("DNC List").

6. Harrison also brings this lawsuit against Defendant for improperly placing these calls to her phone despite the fact she was registered on the DNC List, in violation of the TCPA, 47 U.S.C. § 227(c) *et seq.*, and the TCPA's corresponding regulations.

7. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

8. The TCPA provides protections from people receiving prerecorded or artificial voice calls, which are commonly referred to as robocalls and are referred to as robocalls throughout this Complaint. Specifically, the TCPA provides that each person who receives a prerecorded or artificial voice call in violation of the TCPA is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a).

9. The TCPA affords protections to people, like Harrison, who receive telephone solicitation communications, despite her phone number being registered on the DNC List. *See* 47 U.S.C. § 227(c)(3)(A)(iii); 47 C.F.R. § 64.1200(c)(2). The

penalty for violating the TCPA is up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c)(5).

10. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

11. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

12. To further protect consumers who reside in the State of Texas, like Harrison, the State of Texas also offers sets forth certain requirements of companies who place telemarketing calls to Texas residents. Specifically, the Texas Business & Commerce Code ("TBCC") prohibits telemarketers, like Defendant, from engaging in placing telemarketing calls unless they first obtain a registration certificate from the Office of the Secretary of State for the State of Texas. Defendant also failed to satisfy this basic requirement, and Harrison seeks to hold Defendant accountable for its failure.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

14. This Court has personal jurisdiction over Defendant because Defendant is a Michigan Professional Limited Liability Company, Defendant's principal place of business is in Detroit, Michigan, Defendant transacts business in Michigan, directly markets its services in Michigan, and sells various services in Michigan, and for the reasons otherwise set forth in this Complaint.

15. Defendant has continuous and systematic contacts with the State of Michigan.

16. Harrison was (and is) a resident and citizen of the State of Texas at all times relevant to this Complaint.

17. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District, Defendant's principal place of business is in this District, Defendant's registered agent is located in the District and the harms of Defendant's actions occurred, at least in part, in this venue.

18. The Court has jurisdiction over this dispute for these reasons and for the reasons set forth in this Complaint.

## PARTIES

19. At all times relevant to this Complaint, Harrison was, and is still, the

owner of a cell phone, with a phone number of 323-XXX-9351.

20. Harrison registered her phone number on the DNC List on December 4, 2004, for the purpose of being left alone by telemarketers.

21. The monthly bill associated with Harrison's phone number is issued in her name, and not in the name of a business.

22. Harrison uses her phone primarily for personal purposes, such as communicating with friends and family members.

23. Defendant Aspire Law Group, PLLC, is a Michigan Professional Limited Liability Company with its principal place of business in Michigan. Defendant has been authorized and in good standing to transact business in Michigan and throughout the United States at all times material to this Complaint.

24. Defendant's website is http://aspirelawgroup.com.

25. Defendant's business is to provide debt settlement/resolution services in exchange for monetary compensation.

26. Defendant's website states that Defendant's "services are designed to resolve" issues of "debt" and "collection concerns."

27. Defendant's website states that it negotiates debts for consumers by "reduc[ing] balances" or having the debt be paid "on better terms."

28. Defendant markets its services by, in part, placing telemarketing communications, to consumers such as Harrison.

29. On information and belief, Defendant will offer "loans" which serve the

purpose of paying off and eliminating debt. Defendant would then benefit from the repayment of those loans.

30. Harrison did not provide Defendant "prior express written consent" (as that term is defined in 47 C.F.R. § 64.1200(f)(9)) or any form of consent to be contacted on her phone by Defendant or anyone acting on its behalf.

**DEFENDANT'S INCESSANT CALLS TO PLAINTIFF**

31. Between August and October 2025, Defendant (or someone acting on Defendant's behalf) placed over 50 unsolicited telemarketing calls to Harrison using a prerecorded and/or artificial voice. Each call followed a substantially identical script promoting debt consolidation or personal loans and claimed Plaintiff had been "preapproved," "conditionally approved," or "flagged for final approval."

32. The prerecorded messages used rotating caller names (e.g., Leah Hill, Sofia Hall, Mia Anderson, Ellie Allen, Stella Garcia, and others), but the structure and content of the message remained materially the same across calls. Each message directed Plaintiff to call back a toll-free number in the (833) 487-25xx or (833) 487-26xx range to obtain the offer. The repetition of identical prerecorded messages, combined with the frequent calls placed within short periods of time, demonstrates that Defendant used a prerecorded and/or artificial voice calling campaign to deliver telemarketing solicitations to Plaintiff without prior express written consent.

33. On August 14, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial

voice. The caller stated, “Hey. This is Sofia Young reaching out from the client evaluation team. I see here that we were able to get you flagged for final approval for a debt consolidation loan of up to $30,000 with a low monthly payment of $650 per month. As you may know, funds are limited and are released on a first come, first served basis. Please don't wait too long to get in touch at (833) 487-2545. Once again, (833) 487-2545. Speak with you shortly.”

34. On August 18, 2025, Defendant (or someone acting on Defendant’s behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, “Hey. This is Savannah Torres attempting to reach you from the eligibility review office. I see here that we were able to get you prequalified for a personal loan of up to $55,000 with a simple monthly payment of $675 per month. We're seeing a lot of demand, so I recommend taking action right away. Ping me back when you're available at (833) 487-2550. That number again is (833) 487-2550. Hope to hear from you today.”

35. On August 19, 2025, Defendant (or someone acting on Defendant’s behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, “Hey. This is Leah Hill giving you a quick ring from the financial analysis department. I see here that we were able to get you flagged for final approval for a personal loan as much as $60,000 with a predictable monthly payment of $625 per month. Just keep in mind that these offers are time sensitive and can expire

soon. Give me a quick ring when you're free at (833) 487-2551. Again, (833) 487-2551. Catch you soon.”

36. On August 20, 2025, Defendant (or someone acting on Defendant’s behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, “Hey. This is Sofia Hall hoping to catch you from the offer determination desk. I see here that we were able to get you marked as eligible for a personal loan as much as $35,000 with a simple monthly payment of $750 per month. Once funds run out, we won't be able to hold your spot. Would appreciate a quick reply at (833) 487-2554. That number again is (833) 487-2554. Looking forward to our conversation.”

37. On August 21, 2025, Defendant (or someone acting on Defendant’s behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, “Hey. This is Mia Anderson circling back from the client evaluation group. I see here that we were able to get you conditionally approved for a debt consolidation loan of up to $55,000 with a competitive monthly payment of $475 per month. This opportunity is available only while funding is open. Get back to me at your earliest convenience at (833) 487-2555. Just to repeat, (833) 487-2555. Speak with you shortly.”

38. On August 22, 2025, Defendant (or someone acting on Defendant’s behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, “Hey. This is Ella Taylor reaching out from the loan review

group. I see here that we were able to get you into offer pending status for a debt consolidation loan starting at $35,000 with the affordable monthly payment of $575 per month. This opportunity is available only while funding is open. Let's connect as soon as possible at (833) 487-2556. Just to repeat, (833) 487-2556. Catch you soon."

39. On August 26, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Violet Rodriguez reaching out from the account prescreening team. I see here that we were able to get you preapproved for a personal loan starting at $55,000 with a manageable monthly payment of $700 per month. Please note that approval slots are filling quickly, and this won't last forever. Let's connect as soon as possible at (833) 487-2563. That number again is (833) 487-2563. Look forward to hearing from you."

40. On August 26, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Violet Rodriguez reaching out from the account prescreening team. I see here that we were able to get you preapproved for a personal loan starting at $55,000 with a manageable monthly payment of $700 per month. Please note that approval slots are filling quickly, and this won't last forever. Let's connect as soon as possible at (833) 487-2563. That number again is (833) 487-2563. Look forward to hearing from you."

41. On August 27, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Chloe Carter hoping to catch you from the account prescreening unit. I see here that we were able to get you nearing approval for a personal loan starting at $40,000 with a low monthly payment of $650 per month. Because this is a limited preapproval, it may not be around long. Would appreciate a quick reply at (833) 487-2564. Once again, (833) 487-2564. Look forward to speaking to you."

42. On August 27, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Chloe Carter hoping to catch you from the account prescreening unit. I see here that we were able to get you nearing approval for a personal loan starting at $40,000 with a low monthly payment of $650 per month. Because this is a limited preapproval, it may not be around long. Would appreciate a quick reply at (833) 487-2564. Once again, (833) 487-2564. Look forward to speaking to you."

43. On August 28, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Scarlett Smith. Wanted to get in touch from the loan processing unit. I see here that we were able to get you prescreened for eligibility for a debt consolidation loan as much as $70,000 with a predictable monthly payment

of $350 per month. Please note that approval slots are filling quickly, and this won't last forever. Let's connect as soon as possible at (833) 487-2568. Just repeat, (833) 487-2568. Hope to connect soon."

44. On August 30, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Audrey Carter trying to reconnect from the funding approval department. I see here that we were able to get you tentatively approved for a debt consolidation loan as much as $80,000 with a predictable monthly payment of $675 per month. Funds are being allocated fast, so I encourage you to act quickly. Let's connect as soon as possible at (833) 487-2571. Again, (833) 487-2571. Thanks for your time."

45. On September 1, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Emily White giving you a quick ring from the approval team. I see here that we were able to get you prescreened for eligibility for debt consolidation loans starting at $40,000 with a low monthly payment of $350 per month. Please note that approval slots are going quickly, and this won't last forever. Please don't wait too long to get in touch at (833) 487-2572. Again, (833) 487-2572. Speak with you shortly."

46. On September 2, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial

voice. The caller stated, “Hey. This is Nora Rodriguez attempting to reach you from the loan review group. I see here that we were able to get you prequalified for a debt consolidation loan of up to $70,000 with a great monthly payment of $250 per month. These offers tend to go fast, so timing is important here. Hoping to hear from you shortly at (833) 487-2573. Just to repeat, (833) 487-2573. Hope to connect soon.”

47. On September 4, 2025, Defendant (or someone acting on Defendant’s behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, “Hey. This is Anna Smith. Wanted to get in touch from the eligibility review office. I see here that we were able to get you conditionally approved for a personal loan of up to $75,000 with affordable monthly payment of $325 per month. Please note that approval slots are filling quickly, and this won't last forever. Would appreciate a quick reply at (833) 487-2577. That number again is (833) 487-2577. Talk to you soon.”

48. On September 5, 2025, Defendant (or someone acting on Defendant’s behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, “Hey. This is Ellie Allen attempting to reach you from the funding approval division. I see here that we were able to get you prescreened for eligibility for a debt consolidation loan starting at $60,000 with a manageable monthly payment of $575 per month. This opportunity is available only while funding is open. Give me a callback today if you can at (833) 487-2579. Just to repeat, (833) 487-2579. Look forward to hearing from you.”

49. On September 5, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Ellie Allen attempting to reach you from the funding approval division. I see here that we were able to get you prescreened for eligibility for a debt consolidation loan starting at $60,000 with a manageable monthly payment of $575 per month. This opportunity is available only while funding is open. Give me a callback today if you can at (833) 487-2579. Just to repeat, (833) 487-2579. Look forward to hearing from you."

50. On September 8, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Stella Garcia reaching out from the account prescreening desk. I see here that we were able to get you conditionally approved for a personal loan as much as $30,000 with a comfortable monthly payment of $325 per month. Please note that approval slots are filling quickly, and this won't last forever. We'd love to speak with you today at (833) 487-2581. Again, (833) 487-2581. Until then, take care."

51. On September 8, 2025, Defendant (or someone acting on Defendant's behalf) again called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Stella Garcia reaching out from the account prescreening desk. I see here that we were able to get you conditionally approved for a personal loan as much as $30,000 with a comfortable monthly payment

of $325 per month. Please note that approval slots are filling quickly, and this won't last forever. We'd love to speak with you today at (833) 487-2581. Again, (833) 487-2581. Until then, take care."

52. On September 10, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Isabella Torres, making sure you got our last message from the prequalification desk. I see here that we were able to get you past initial review for a debt consolidation loan of up to $30,000 with a budget friendly monthly payment of $450 per month. Funds are being allocated fast, so I encourage you to act quickly. Let me know if you have any questions, and call me back at (833) 487-2585. Once again, (833) 487-2585. Talk to you soon."

53. On September 10, 2025, Defendant (or someone acting on Defendant's behalf) again called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Isabella Torres, making sure you got our last message from the prequalification desk. I see here that we were able to get you past initial review for a debt consolidation loan of up to $30,000 with a budget friendly monthly payment of $450 per month. Funds are being allocated fast, so I encourage you to act quickly. Let me know if you have any questions, and call me back at (833) 487-2585. Once again, (833) 487-2585. Talk to you soon."

54. On September 11, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial

voice. The caller stated, "Hey. This is Emilia Mitchell calling from the loan review office. I see here that we were able to get you past initial review for a debt consolidation loan of up to $75,000 with a manageable monthly payment of $500 per month. Because this is a limited preapproval, it may not be around long. Call me as soon as you get this at (833) 487-2587. That number again is (833) 487-2587. I'll be standing by."

55. On September 11, 2025, Defendant (or someone acting on Defendant's behalf) again called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Emilia Mitchell calling from the loan review office. I see here that we were able to get you past initial review for a debt consolidation loan of up to $75,000 with a manageable monthly payment of $500 per month. Because this is a limited preapproval, it may not be around long. Call me as soon as you get this at (833) 487-2587. That number again is (833) 487-2587. I'll be standing by."

56. On September 16, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Lucy and Gwen circling back from the approval team. I see here that we were able to get you tentatively approved for a personal loan of up to $60,000 with a budget friendly monthly payment of $550 per month. These offers tend to go fast, so timing is important here. Let me know if you have any questions, and call me back at (833) 487-2594. Just to repeat, (833) 487-2594. Eager to speak with you."

57. On September 16, 2025, Defendant (or someone acting on Defendant's behalf) again called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Lucy and Gwen circling back from the approval team. I see here that we were able to get you tentatively approved for a personal loan of up to $60,000 with a budget friendly monthly payment of $550 per month. These offers tend to go fast, so timing is important here. Let me know if you have any questions, and call me back at (833) 487-2594. Just to repeat, (833) 487-2594. Eager to speak with you."

58. On September 17, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Olivia King. Just wanted to follow-up from the loan review group. I see here that we were able to get you flagged for final approval for a debt consolidation loan of up to $70,000 with a great monthly payment of $475 per month. Please note that approval slots are filling quickly, and this won't last forever. Hoping to hear from you shortly at (833) 487-2595. Just to repeat, (833) 487-2595. Eager to speak with you."

59. On September 18, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Isabella Anderson trying to reconnect from the credit review team. I see here that we were able to get you conditionally approved for a debt consolidation loan as much as $50,000 with a predictable monthly payment of

$325 per month. As you may know, funds are limited and are released on a first come, first served basis. Would love to speak with you today at (833) 487-2601. That number again is (833) 487-2601. Looking forward to our conversation."

60. On September 19, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Audrey Jackson reaching out from the account prescreening group. I see here that we were able to get you preapproved for a debt consolidation loan starting at $50,000 with a manageable monthly payment of $475 per month. Funds are being allocated fast, so I encourage you to act quickly. Just give me a buzz when you're ready at (833) 487-2602. That number again is (833) 487-2602. Looking forward to our conversation."

61. On September 20, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Layla Nelson trying to reconnect from the credit review desk. I see here that we were able to get you flagged for final approval for a personal loan starting at $30,000 with a budget friendly monthly payment of $400 per month. Once funds run out, we won't be able to hold your spot. Call me back as soon as possible at (833) 487-2604. That number again is (833) 487-2604. Talk to you soon."

62. On September 22, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Harper Anderson circling back from the approval

team. I see here that we were able to get you conditionally approved for a debt consolidation loan as much as $35,000 with a low monthly payment of $700 per month. Funds are being allocated fast, so I encourage you to act quickly. Please don't wait too long to get in touch at (833) 487-2605. Once again, (833) 487-2605. Hope to connect soon."

63. On September 22, 2025, Defendant (or someone acting on Defendant's behalf) again called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Harper Anderson circling back from the approval team. I see here that we were able to get you conditionally approved for a debt consolidation loan as much as $35,000 with a low monthly payment of $700 per month. Funds are being allocated fast, so I encourage you to act quickly. Please don't wait too long to get in touch at (833) 487-2605. Once again, (833) 487-2605. Hope to connect soon."

64. On September 22, 2025, Defendant (or someone acting on Defendant's behalf) again called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Harper Anderson circling back from the approval team. I see here that we were able to get you conditionally approved for a debt consolidation loan as much as $35,000 with a low monthly payment of $700 per month. Funds are being allocated fast, so I encourage you to act quickly. Please don't wait too long to get in touch at (833) 487-2605. Once again, (833) 487-2605. Hope to connect soon."

65. On September 23, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Camilla Jones circling back from the funding approval unit. I see here that we were able to get you tentatively approved for a personal loan of up to $30,000 with a simple monthly payment of $525 per month. Just keep in mind that these offers are time sensitive and can expire soon. Hoping to hear from you shortly at (833) 487-2607. Again, (833) 487-2607. Look forward to hearing from you."

66. On September 24, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Everly Thompson making sure you got our last message from the approval desk. I see here that we were able to get you conditionally approved for a debt consolidation loan starting at $30,000 with a flexible monthly payment of $475 per month. Please note that approval slots are filling quickly, and this won't last forever. Call me as soon as you get this at (833) 487-2608. Again, (833) 487-2608. Talk soon."

67. On September 24, 2025, Defendant (or someone acting on Defendant's behalf) again called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Everly Thompson making sure you got our last message from the approval desk. I see here that we were able to get you conditionally approved for a debt consolidation loan starting at $30,000 with a flexible monthly payment of $475 per month. Please note that approval slots are filling quickly,

and this won't last forever. Call me as soon as you get this at (833) 487-2608. Again, (833) 487-2608. Talk soon."

68. On September 26, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Charlotte Thompson reaching out from the offer determination unit. I see here that we were able to get you into offer pending status for a personal loan starting at $65,000 with a great monthly payment of $375 per month. I don't want you to miss out. Spots are extremely limited. We'd love to speak with you today at (833) 487-2611. Again, (833) 487-2611. I'll be standing by."

69. On October 1, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Eleanor Garcia trying to connect from the loan processing unit. I see here that we were able to get you past initial review for a debt consolidation loan of up to $70,000 with a simple monthly payment of $550 per month. Funds are being allocated fast, so I encourage you to act quickly. Just give me a buzz when you're ready at (833) 487-2615. Again, (833) 487-2615. Thanks for your time."

70. On October 1, 2025, Defendant (or someone acting on Defendant's behalf) again called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Eleanor Garcia trying to connect from the loan processing unit. I see here that we were able to get you past initial review for a debt consolidation loan of up to $70,000 with a simple monthly payment of $550 per

month. Funds are being allocated fast, so I encourage you to act quickly. Just give me a buzz when you're ready at (833) 487-2615. Again, (833) 487-2615. Thanks for your time."

71. On October 3, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Scarlett Jackson giving you a quick call from the underwriting department. I see here that we were able to get you conditionally approved for a personal loan of up to $65,000 with a simple monthly payment of $350 per month. These offers tend to go fast, so timing is important here. I would appreciate a quick reply at (833) 487-2617. Once again, (833) 487-2617. Look forward to speaking to you."

72. On October 4, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Aubrey Davis checking in from the underwriting desk. I see here that we were able to get you nearing approval for a personal loan as much as $55,000 with a comfortable monthly payment of $575 per month. Funds are being allocated fast, so I encourage you to act quickly. Give me a callback today if you can at (833) 487-2618. Again, (833) 487-2618. Until then, take care."

73. On October 6, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Nora Rodriguez hoping to catch you from the

underwriting team. I see here that we were able to get you flagged for final approval for a personal loan of up to $30,000 with an affordable monthly payment of $450 per month. I don't want you to miss out. Spots are extremely limited. Let's connect as soon as possible at (833) 487-2619. Once again, (833) 487-2619. Talk to you when you're ready."

74. On October 11, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Luna Thompson trying to reconnect from the loan review desk. I see here that we were able to get you prescreened for eligibility for a debt consolidation loan starting at $30,000 with a simple monthly payment of $525 per month. These offers tend to go fast, so timing is important here. Ping me back when you're available at (833) 487-2634. That number again is (833) 487-2634. Chat soon."

75. On October 13, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Chloe Green attempting to reach you from the approval unit. I see here that we were able to get you preapproved for a debt consolidation loan starting at $65,000 with a budget friendly monthly payment of $625 per month. These offers tend to go fast, so timing is important here. Feel free to return my call at (833) 487-2636. That number again is (833) 487-2636. Eager to speak with you."

76. On October 14, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Chloe Green attempting to reach you from the approval unit. I see here that we were able to get you preapproved for a debt consolidation loan starting at $65,000 with a budget friendly monthly payment of $625 per month. These offers tend to go fast, so timing is important here. Feel free to return my call at (833) 487-2636. That number again is (833) 487-2636. Eager to speak with you."

77. On October 14, 2025, Defendant (or someone acting on Defendant's behalf) again called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Chloe Green attempting to reach you from the approval unit. I see here that we were able to get you preapproved for a debt consolidation loan starting at $65,000 with a budget friendly monthly payment of $625 per month. These offers tend to go fast, so timing is important here. Feel free to return my call at (833) 487-2636. That number again is (833) 487-2636. Eager to speak with you."

78. On October 14, 2025, Defendant (or someone acting on Defendant's behalf) again called Plaintiff on her phone. The call utilized a prerecorded and/or artificial voice. The caller stated, "Hey. This is Chloe Green attempting to reach you from the approval unit. I see here that we were able to get you preapproved for a debt consolidation loan starting at $65,000 with a budget friendly monthly payment of $625

per month. These offers tend to go fast, so timing is important here. Feel free to return my call at (833) 487-2636. That number again is (833) 487-2636. Eager to speak with you."

79. Being annoyed and frustrated with the calls, Harrison called back two of the numbers, to determine who was calling her, and to ultimately get the calls to stop. The two numbers she called back were the callback numbers for the first and last calls she received. The phone numbers Harrison called back were 833-487-2545 and 833-487-2636.

80. Upon calling both numbers, Harrison was connected to Defendant. To further confirm Defendant was the one placing incessantly calling her, she spoke with one of Defendant's representatives and feigned interest in Defendant's debt resolution services. Defendant then emailed her a "Retainer Package" with Defendant's logo and the name "Aspire Law Group PLLC."

81. The telephone solicitation calls placed by Defendant to Harrison were placed with the purpose of selling Defendant's debt settlement services to Harrison.

82. On information and belief, Defendant may have placed additional calls to Harrison that are not identified in this Complaint and which may be identified through discovery.

83. The communications received by Harrison were harassing, annoying, and invaded her right to privacy, namely the right to be left alone from unwanted telemarketing calls.

84. Harrison never inquired about Defendant's services, nor did she provide any form of consent to be contacted by Defendant on her cell phone.

**DIRECT AND VICARIOUS LIABILITY**

85. Without the benefit of discovery, and because Defendant disclosed its identity in connection with the communications at issue, Harrison assumes Defendant directly placed the communications at issue.

86. However, if some or all the communications were placed by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

87. On May 9, 2013, the FCC determined that telemarketers like Defendant could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal

citations omitted).

88. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

89. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

90. If Defendant directly placed the communications at issue to Harrison, Defendant is directly liable for the placing of those calls.

91. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

92. If Defendant did not directly place the communications at issue to Harrison, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

93. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting sales from unlawful telemarketing communications.

94. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

95. Defendant acted as a principal to the telemarketing agent(s) acting on its

behalf.

96. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

97. For the count identified below, if Defendant directly placed the calls at issue to Harrison, it is directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

**<u>COUNT I</u>**
**Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(b), *et seq.* (Prerecorded/Artificial Voice Violations)**

98. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

99. The TCPA provides, in part:

> It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . .

47 U.S.C. § 227(b)(1)(A)(iii).

100. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

101. The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." *See* FCC 12-21, CG Docket 02-278

(effective October 16, 2013); 47 C.F.R. § 64.1200(a)(2)

102. The term "prior express written consent" as defined by the Code of Federal Regulations means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

103. The TCPA provides for a private right of action and statutory damages of $500 per violation, and up to $1,500.00 per violation. 47 U.S.C. § 227(b)(3).

104. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA of placing prerecorded or artificial voice calls without first obtaining prior express written consent to place such calls. *See* 47 U.S.C. § 227(b)(3).

105. By placing artificial or prerecorded voice calls to Harrison's phone, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(b) and the TCPA's corresponding regulations.

106. Defendant or those acting on its behalf willfully violated the TCPA when placing prerecorded voice calls to Harrison's phone.

107. Harrison is entitled to damages of $500.00 per violation for each call made by Defendant or those acting on its behalf that the Court finds violates the TCPA and

up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

WHEREFORE Plaintiff Shelby Harrison requests that the Court enter judgment in her favor and against Defendant Aspire Law Group PLLC for its violations of Section 227(b) and the TCPA's corresponding regulations, for $500 per violation and up to $1,500 per violation determined to be willful, for all available pre-judgment and post-judgment interest amounts, for costs, and for all other amounts that this Court deems just and proper.

## COUNT II
## Violations of the Telephone Consumer Protection Act
## 47 U.S.C. § 227(c), *et seq.* (National DNC List Violations)

108. Harrison incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

109. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

110. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

111. By placing telephone solicitations to Harrison's phone number, which was

registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c), and the TCPA's corresponding regulations.

112. In addition, the TCPA allows the Court to enjoin Defendant from placing calls to phone numbers that are registered on the DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

113. Defendant knew or had reason to know that Harrison's phone number was on the DNC List but placed telephone solicitation communications to her anyway.

114. Defendant willfully violated the TCPA by placing telephone solicitation communications to Harrison despite knowing or having reason to know that she did not consent to receiving calls from Defendant and that her phone number was registered on the DNC List.

115. Harrison is entitled to damages of up to $500.00 per violation for each call placed by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

WHEREFORE Plaintiff Shelby Harrison requests that the Court enter judgment in her favor and against Defendant Aspire Law Group PLLC for its violations of Section 227(c) and the TCPA's corresponding regulations, for up to $500 per violation and up to $1,500 per violation determined to be willful, for all available pre-judgment and post-judgment interest amounts, for costs, and for all other amounts that this Court deems just and proper.

**COUNT III**

**Violations of the Texas Business & Commerce Code**
**Tex. Stat. Ann. § 302.101 *et seq.* (Registration Violations)**

116. Harrison incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

117. Harrison received the calls at issue from Defendant on her cell phone in Texas.

118. Section 302.101 of the Texas Business & Commerce Code ("TBCC") prohibits sellers, like Defendant, from engaging in telephone solicitation from a location in Texas or to a purchaser located in Texas unless the seller obtains a registration certificate from the Office of the Secretary of State for the State of Texas.

119. Defendant is a "seller" as defined by Section 302.001(5) of the TBCC because it made telephone solicitations to Harrison.

120. Harrison is a "purchaser" as defined by Section 302.001(3) of the TBCC because she was solicited by Defendant to purchase Defendant's debt settlement services.

121. The calls placed by Defendant to Harrison were "telephone solicitations" as defined by Section 302.001(7) of the TBCC because the phone calls were intended to induce Harrison to purchase Defendant's debt settlement services.

122. Defendant violated Section 302.101 of the TBCC when it or its representatives engaged in its incessant placing of telephone solicitation calls to Harrison without obtaining the necessary registration certificate from the Office of the

Secretary of State for the State of Texas.

123. Section 302.302(a) of the TBCC provides that a person who violates the requirements of Section 302 is subject to a penalty of up to $5,000.00 for each violation.

124. Section 302.302(a) provides that the party bringing the action is also entitled to recover all reasonable costs incurred in prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorneys' fees.

WHEREFORE Plaintiff Shelby Harrison requests that the Court enter judgment in her favor and against Defendant Aspire Law Group PLLC for its violations of the TBCC corresponding regulations, for up to $5,000 per violation, all reasonable costs incurred in prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorneys' fees and for all other amounts that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Shelby Harrison demands a jury trial.

Dated: May 5, 2026

Respectfully submitted,

**BUTSCH ROBERTS & ASSOCIATES LLC**

<u>/s/*Christopher E. Roberts*</u>
Christopher E. Roberts (#61895MO)
Email: CRoberts@butschroberts.com
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

**LAW OFFICE OF BEN GONEK, PLLC**

<u>*/s/ Ben M. Gonek*</u>
Ben M. Gonek (P43716)
E-mail: ben@goneklaw.com
14290 Northline Road
Southgate, Michigan 48195
Telephone: (313) 963-3377

Attorneys for Plaintiff